**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**



Guy R. Humphrey
United States Bankruptcy Judge

**Dated: September 1, 2022**

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| *In re*: | : | |
| BRANDON C. BUCHHOLZ, | : | Case No. 22-30584 |
| | : | Chapter 13 |
| *Debtor.* | : | Judge Humphrey |
| | : | |

---

### MEMORANDUM ORDER DENYING MOTION TO DISQUALIFY (DOC. 22)

---

Andrew J. Zeigler ("Counsel"), debtor's counsel in this case, seeks that I, Judge Guy R. Humphrey (hereinafter, the "Judge" or the "Court"), be disqualified from ruling on the reasonableness of Counsel's attorney fees in this case because the Judge's "impartiality might reasonably be questioned." Doc. 22 at 1.[1] As will be explained, Counsel's core argument would permit litigants to seek disqualification of a federal judge because a party or legal counsel disagree with that judge's precedent. This argument has no basis in the law and disqualification would in fact violate such law. Additionally, such a theory put into practice would have profoundly bad policy implications because it would invite rampant judge shopping. *Rhiel v.*

---

[1] Whether the disqualification would apply to the fee issue alone or the entire case is moot because the court finds no basis for disqualification.

*Hook* (*In re Johnson*), 408 B.R. 123, 127 (Bankr. S.D. Ohio 2009) (Preston, J.). The motion to disqualify is denied.

## I.  Background

Prior to this case being filed, the Court reviewed the proposed Chapter 13 plan in a different case, *In re Spurlock*, No. 21-31957. *Spurlock* did not involve Counsel. In that case, the debtor proposed a plan payment of $250 each month, with a 3% dividend to non-priority unsecured creditors, and an estimated secured claim of $1,958 to pay off a car loan. Doc. 13. The Counsel sought a "no-look" fee of $4,350. Doc. 1 at 50. That fee of $4,350 is the maximum flat fee in the Bankruptcy Court for the Southern District of Ohio's no-look fee structure, which includes an enumerated list of items counsel opting to charge a flat fee must perform, and otherwise excludes work for which counsel may separately seek compensation. See LBR 2016-1(b)(2)(A).[2]

The court entered an order in *Spurlock* on February 22, 2022. Doc. 20. The order raised two issues for the confirmation hearing. First, the Court asked whether the Chapter 13 plan was filed in good faith. See 11 U.S.C. § 1325(a)(3) (providing the plan must be proposed in "good faith and not by any means forbidden by law"). Second, and relevant to Counsel's argument in the present motion, the order requested debtor counsel to address "[w]hether the no-look fee provided by Local Bankruptcy Rule 2016-1(b)(2)(A) is appropriate in this case as a reasonable attorney's fee. See *In re Spear*, [636 B.R. 765] (Bankr. S.D. Ohio Jan. 10, 2022); *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991); 28 U.S.C. § 330."

The attorney for the debtor in the *Spurlock* case filed a statement addressing both issues raised by the Court on March 17, 2022. Doc. 23. The Court determined the case was confirmable

---

[2] For a further discussion of the structure of the no-look fee in this district, see *In re Spurlock*, _ B.R. _, 2022 WL 3041256, at *7-9, 2022 Bankr. LEXIS 2153, at *20-24 (Bankr. S.D. Ohio Aug. 1, 2022).

but set an evidentiary hearing to address the appropriateness of the attorney fees for April 7, 2022. Doc. 26. The Court then held an evidentiary hearing and took the matter under advisement. On August 1, 2022 the Court entered a Memorandum Order granting in part and denying in part the attorney fees sought by Chapter 13 debtor counsel. Doc. 38. The court awarded debtor counsel $4,320, which included $3,660 for the work in that case exclusive of the issues raised by the Court as to confirmation. *Id.* at 44. The Court awarded an additional $660 for debtor's counsel's work on a memorandum filed in response to the court's sua sponte concerns about confirmation. *Id.*

Between the time of the *Spurlock* hearing and determination of the matter, the Court issued orders in other Chapter 13 cases which raised the same legal issue of whether the maximum no-look fee was reasonable and necessary for those cases and set a consolidated prehearing conference. Based on the Court's review of the information available on the docket, the Court noted in its scheduling orders that "[t]hese cases all appear to primarily address a secured vehicle claim and generally lack other typical Chapter 13 issues including, but not limited to, mortgage loan claims, land contracts, significant tax issues, secured claim arrearages, small business income, or unusual special plan provisions. Therefore, the Court, sua sponte, raises the issue of whether the requested maximum no-look fee is reasonable in light of the comparatively limited issues and complexity presented by the circumstances in this case." See e.g. *In re Cox*, No. 21-31418, Doc. 45 at 1-2. That prehearing conference was conducted on May 19, 2022. The Court, after conferring with counsel regarding scheduling, chose August 18, 2022 for the hearing on the attorney fees in all of those cases and entered scheduling orders accordingly.

To pause here, this Judge entered the *Spurlock* decision prior to the August 18, 2022 hearing with a specific intent. In addition to giving the attorney in the *Spurlock* decision a determination of issues significant to him and his client in a reasonable amount of time, the Court did so because it believed that the attorneys who had fees at issue at the August 18, 2022 hearing would be best served by understanding the court's view of the law in this area. The Court went to some effort to release the decision in time for the attorneys to review it in advance of the August 18, 2022 hearing. This Judge informed the attorneys at the prehearing of his desire to release *Spurlock* prior to the hearing.

Shortly before the prehearing, specifically May 5, 2022, Counsel filed this Chapter 13 case for the debtor, Brandon C. Buchholz. Doc. 1. Counsel disclosed that he had agreed with his client to accept $4,350 for this case. *Id.* at 50-51.

Counsel filed a proposed Chapter 13 plan for his client on May 9, 2022. Doc. 11. The plan proposes to pay $550 each month to fund the plan with no dividend provided for non-priority unsecured creditors. *Id.* at 1. The plan assumed an automobile lease and the debtor's month-to-month tenancy on his residence. *Id.* at 5. The debtor also proposed to pay directly an ongoing domestic support obligation. *Id.* at 4.

The plan in this case was confirmed, without objection, through an order entered on July 21, 2022. Doc.16. Also, on July 21st, the Court, sua sponte entered an order to consider the reasonableness of the maximum no-look fee. Doc. 17. The hearing was also set for August 18, 2022 at the same time as the other cases for which the court raised the reasonableness of the attorney fees. Based on the Court's review of the docket, the scheduling order noted, as in the other cases, that the maximum no-look fee might not be an appropriate fee in this case. *Id.* at 1. In this and every other case set for August 18, 2022, the attorneys had the opportunity to

voluntarily reduce the fee or proceed with seeking approval of the maximum no-look fee. In the latter circumstance, the attorneys were entitled to file memoranda and affidavits supporting the fee in each particular case and, if the attorneys or parties chose to present evidence at the hearing, to file witness lists and proposed exhibits by a date certain. The Court noted that information provided prior to the hearing could allow the hearing to be cancelled and the $4,350 fee approved. *Id.* at 2.

As detailed later, prior to the hearing and accelerating in the two days immediately prior to the scheduled hearing (August 16 and 17, 2022), the Court reviewed multiple prehearing filings from attorneys to support the maximum no-look fee. See Exhibit A (adjudication of cases addressing the reasonableness of the maximum no-look fee). Similar to the filings of other attorneys, on August 16, 2022 Counsel filed an affidavit to support his fee. Doc. 23. In addition, Counsel filed the subject motion to disqualify (the "Motion"). Doc. 22.

In order to address the allegations in the Motion, the court continued the hearings in all the unresolved cases scheduled on or after August 18, 2022, including the hearing in this case, to a date to be determined later. Doc. 24.

## II.    Law of Disqualification

A federal judge is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455; *Liteky v. U.S.*, 510 U.S. 540, 541 (1994). Bankruptcy judges are governed by § 455.[3] See Fed. R. Bankr. P. 5004 ("A bankruptcy

---

[3] Section 455 states, in relevant part that:

    (a)  Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

    (b)  He shall also disqualify himself in the following circumstances:

        (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

28 U.S.C. § 455.

judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding

or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be

disqualified from presiding over the case."). A "corresponding duty" exists to not recuse when

cause has not been shown. *Barna v. Haas* (*In re Haas*), 292 B.R. 167, 175 (Bankr. S.D. Ohio

2003) (Hoffman, C.J.). Disqualification is required "when, based on an objective standard of a

reasonable question with knowledge of all the facts, the Bankruptcy Judge concludes that her

impartiality is reasonably placed into question." *Id.* at 175-76 (cited in *In re Royal Mgmt., Inc.*,

525 B.R. 338, 380 (B.A.P. 6th Cir. 2015), *aff'd sub nom. Grossman v. Wehrle* (*In re Royal

Mgmt., Inc.*), 652 Fed. Appx. 330 (6th Cir. 2016)).

Recusal generally falls into two categories. The first situation is when a judge forms an

opinion based on sources outside of the judicial proceeding, which is referred to as the

"Extrajudicial Source Doctrine." As focused on by Counsel, the extrajudicial source could

include a prior proceeding. *Liteky*, 510 U.S. at 545. In *Liteky*, a criminal proceeding, defendants

were charged with willful destruction of property. *Id.* at 542. The defendants believed the judge

in that case should have been disqualified based upon events related to an earlier trial with the

same judge. *Id.* Justice Scalia described it as follows:

> In the 1983 bench trial, Bourgeois, a Catholic priest of the Maryknoll
> order, had been tried and convicted of various misdemeanors committed during a
> protest action, also on the federal enclave of Fort Benning. Petitioners claimed
> that recusal was required in the present case because the judge had displayed
> "impatience, disregard for the defense and animosity" toward Bourgeois,
> Bourgeois' codefendants, and their beliefs. The alleged evidence of that included
> the following words and acts by the judge: stating at the outset of the trial that its
> purpose was to try a criminal case and not to provide a political forum; observing
> after Bourgeois' opening statement (which described the purpose of his protest)
> that the statement ought to have been directed toward the anticipated evidentiary
> showing; limiting defense counsel's cross-examination; questioning witnesses;
> periodically cautioning defense counsel to confine his questions to issues material
> to trial; similarly admonishing witnesses to keep answers responsive to actual
> questions directed to material issues; admonishing Bourgeois that closing

argument was not a time for "making a speech" in a "political forum"; and giving Bourgeois what petitioners considered to be an excessive sentence. The final asserted ground for disqualification—and the one that counsel for petitioners described at oral argument as the most serious—was the judge's interruption of the closing argument of one of Bourgeois' codefendants, instructing him to cease the introduction of new facts, and to restrict himself to discussion of evidence already presented.

  The District Judge denied petitioners' disqualification motion, stating that matters arising from judicial proceedings were not a proper basis for recusal. At the outset of the trial, Bourgeois' counsel informed the judge that he intended to focus his defense on the political motivation for petitioners' actions, which was to protest United States Government involvement in El Salvador. The judge said that he would allow petitioners to state their political purposes in opening argument and to testify about them as well, but that he would not allow long speeches or discussions concerning Government policy. When, in the course of opening argument, Bourgeois' counsel began to explain the circumstances surrounding certain events in El Salvador, the prosecutor objected, and the judge stated that he would not allow discussion about events in El Salvador. He then instructed defense counsel to limit his remarks to what he expected the evidence to show. At the close of the prosecution's case, Bourgeois renewed his disqualification motion, adding as grounds for it the District Judge's "admonishing [him] in front of the jury" regarding the opening statement, and the District Judge's unspecified "admonishing [of] others," in particular Bourgeois' two *pro se* codefendants. The motion was again denied. Petitioners were convicted of the offense charged.

*Id.* at 542-53. In the end, the "extrajudicial source" doctrine is described as follows:

  For all these reasons, we think that the "extrajudicial source" doctrine, as we have described it, applies to § 455(a). **As we have described it, however, there is not much doctrine to the doctrine. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for "bias or prejudice" recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice.** Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" *factor,* than of an "extrajudicial source" *doctrine,* in recusal jurisprudence.

*Id.* at 554–55 (emphasis added). The decision further states that "judicial rulings alone almost

never constitute a valid basis for a bias or partiality motion." *Id.* at 555-56 (citing *United States*

*v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). As a corollary to that principle, the Supreme Court further commented that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for bias or partiality." *Liteky*, 510 U.S. at 555. The Supreme Court ultimately concluded that the application of these principles to the judge's actions was "not difficult" and "[n]one of the grounds petitioners assert require disqualification." *Id.* at 556.

The Sixth Circuit has also had occasion to opine on these principles. In doing so, the court has made it clear that a judge's view of the law cannot serve as a basis for disqualification:

> The court observed that disqualification under both § 144 and § 455 must be predicated "upon extrajudicial conduct rather than on judicial conduct," *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (quoting *City of Cleveland v. Krupansky*, 619 F.2d 576, 578 (6th Cir.), *cert. denied*, 449 U.S. 834, 66 L. Ed. 2d 40, 101 S. Ct. 106 (1980)), and upon "a personal bias 'as distinguished from judicial one,' arising 'out of the judge's background and association' and **not from the 'judge's view of the law.'**" 716 F.2d 1088 at 1090 (*quoting Oliver v. Michigan State Board of Education*, 508 F.2d 178, 180 (6th Cir. 1974), *cert. denied*, 421 U.S. 963, 44 L. Ed. 2d 449, 95 S. Ct. 1950 (1975)).

*Green v. Nevers*, 111 F.3d 1295, 1303-04 (6th Cir. 1997) (emphasis added).

The law of recusal also recognizes that a judge can be required to recuse "when a judge whose information is limited to that revealed during the course of judicial proceedings forms a favorable or unfavorable opinion so extreme that fair judgment appears impossible." *In re Nicole Energy Svcs., Inc.*, 423 B.R. 840, 844-45 (Bankr. S.D. Ohio 2010) (Hoffman, C.J.) (noting this principle is referred to as the "Pervasive Basis Exception."). "*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary effort at courtroom administration—remain

immune." *Liteky*, 510 U.S. at 556. See also *Barclays/Am. Bus. Credit v. Adams* (*In re Adams*), 31 F.3d 389, 396 (6th Cir. 1994) (citing *Liteky* and determining the judge did not show "deep-seated favoritism" toward the plaintiff or "antagonism" to the defendant); *Alemarah v. GM, LLC*, 980 F.3d 1083 (6th Cir. 2020) (decision did not condone comments of a district court judge to counsel but found an insufficient basis for disqualification).

### III.    Analysis

The Motion does not raise any issue with this Judge's conduct during the *Spurlock* hearing or case. Nor does it allege any such conduct in this case. Instead, Counsel argues this Judge's animus stems from the *Spurlock* decision itself. He spends significant space in his memorandum criticizing the reasoning and legal authority in the *Spurlock* decision. The Court generally does not analyze its own decisions (except as applicable to another decision involving a related issue of fact or law). However, because the Motion suggests the decision shows an extreme bias requiring disqualification from the fee issue in this case, the Court will address certain points.

The Motion raises the Court's "repeated references" to Ohio Rule of Professional Conduct 1.5 as a "veiled threat to the bar." Doc. 22 at 7. See Ohio Rule of Prof. Conduct 1.5 ("A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee. A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee."). Setting aside the fact that this rule is not referenced "repeatedly" in the decision, this Judge did not and does not threaten the bar, in a veiled manner or in any other way. The decision references this rule as part of a discussion of the no-look fee structure and its relationship to § 330 of the Bankruptcy Code, as interpreted by the Sixth Circuit. *In re Spurlock*, __ B.R. __, 2022 WL

9

3041256, at *15-19, 2022 Bankr. Lexis 2153, at *35-46 (Bankr. S.D. Ohio Aug. 1, 2022). Ohio

Rule of Prof. Conduct 1.5, like Code § 330, requires that any attorney fee charged by an attorney

practicing in the State of Ohio be reasonable. That discussion ultimately concludes this district's

no-look fee is consistent with the Bankruptcy Code and Sixth Circuit law. 2022 WL 3041256, at

*19, 2022 Bankr. Lexis 2153, at *37-38. However, the Court also did conclude that "the No-

Look Fee Rule does not entitle attorneys to receive an identical fee in every case or eliminate the

requirement that a fee be reasonable and tied to actual and necessary work for the benefit of the

estate or the debtor." 2022 WL 3041256, at *1, 2022 Bankr. Lexis 2153, at *2. The Judge did not

threaten counsel in *Spurlock*, nor any other counsel, with pursuit of disciplinary proceedings.[4]

    The Court's view was (and is) that Local Bankruptcy Rule 2016-1(b)(2)(A), 11 U.S.C.

§ 330, Sixth Circuit precedent, and attorneys' ethical obligations do not allow the maximum no-

look fee to be charged in every Chapter 13 case. *Spurlock* is a significant decision affecting

attorneys' fees in future Chapter 13 cases before this Judge that may be factually similar. But the

adjustment of debtor attorney fees, whether in Chapter 13, 7, or 11, does not indicate the attorney

acted in an unethical manner, particularly in this situation when the Court's precedent is newly

minted. In all circumstances, the Court's consideration of fee applications is not an exact science,

but the Court's review of attorney fees in all cases is nevertheless this Judge's obligation. *In re

Cripps*, 549 B.R. 836, 848-49 (Bankr. W.D. Mich. 2016). These legal determinations, regardless

of how much Counsel may disagree with them, do not demonstrate bias that would justify

disqualification. *Liteky*, 510 U.S. at 555-56.

---

[4] To the contrary, the Court concluded the Memorandum Order with the following statement: "The court does not find that Fesenmyer provided substandard or deficient services in any manner. To the contrary, Fesenmyer has proven to be a very competent and compassionate practitioner, always striving to provide his clients with quality, effective services. And the court lauds Fesenmyer for presenting counsel's position on the issues presented by this case and similar cases. The court's decision is not a reflection upon Fesenmyer's representation, but rather a determination of the appropriate reasonable compensation for the services provided in this case." 2022 WL 3041256, at *23, 2022 Bankr. Lexis 2153, at *64.

The Motion alleges that the Court has already formed an opinion about the fees in this case. One such asserted reason is because the Court "largely disregarded" the testimony of the debtor's attorney and the expert witness in the *Spurlock* hearing and cited various decisions as part of its analysis to reach a different conclusion. Doc. 22 at 5-6. Counsel believes that he is in a "no-win situation" because he cannot contest the decisions cited by the Court in *Spurlock*. *Id.* at 6. Further, counsel is concerned that the Court has cited its own recent rulings on fees in the *Spurlock* decision and will cite *Spurlock* at the hearing in this case and rule against him.

The Court is not going to re-hash the *Spurlock* hearing testimony, nor the Court's analysis in the *Spurlock* decision in order to analyze the Motion. Such an exercise would be pointless. The relevant point is that Counsel's disqualification argument is premised on a fundamentally flawed understanding as to what constitutes judicial bias under 28 U.S.C. § 455. It also misconstrues what judges do in the normal course of the determination of matters. The Court ruled on its view of the law in awarding debtor counsel fees in Chapter 13 cases. This ruling is the Court's expression of its view of the law and, again, cannot, without more, form a basis for disqualification. *Liteky*, 510 U.S. at 555-56; *Green*, 111 F.3d at 1303-04. The Court is entitled to consider the testimony of a witness and reach a different conclusion. It is part and parcel of the job of any judge. The Court does agree with Counsel that it is almost certainly true that the Court would cite *Spurlock* in any future decision in this case or others concerning a no-look fee. The Court also is likely to cite other prior rulings of this Judge and of other judges addressing similar legal issues. The reason is simple. Those decisions express the Court's legal conclusions regarding how the district's no-look fee rule should be applied. Legal opinions of a judge do not, in themselves, show bias. *Liteky*, 550 U.S. at 555-56; *Green*, 111 F.3d at 1303-04. Adverse decisions, even involving the same party, also do not require disqualification. See *Rhiel*

11

*v. Hook* (*In re Johnson*), 408 B.R. 123, 127 (Bankr. S.D. Ohio 2009) ("Every case that goes to trial ends in a decision adverse to one of the parties. It would be an anomalous result for the judicial system to assign all related cases to one judge, then require his recusal after he rules in one of the cases. Thus, an adverse decision alone cannot be assumed to detract from the judge's impartiality.").

Continuing this theme, Counsel also states that "this case was specifically selected as it fits the criteria set forth in *Spurlock* and provides to reduce the fee application with a simple cite to the *Spurlock* decision." Doc. 22 at 6. A portion of this statement is correct. The Court reviews debtor counsel's fees in all Chapter 13 cases. It is also correct that cases which appear to be factually similar to *Spurlock* have been scrutinized. In reviewing each Chapter 13 case for the appropriateness or reasonableness of the attorney fees, the Court reviews and analyzes all filings on the docket, including the plan, schedules, Statement of Financial Affairs, and other relevant filings.

In the days and hours immediately prior to the Court's scheduled August 18, 2022 hearing, the Court addressed the fees in many of the cases based upon supplemental filings made by the attorneys in accordance with the Court's scheduling order. In some of those cases, the attorneys voluntarily reduced the fee, and the court subsequently determined that figure was reasonable and necessary. See Exhibit A. In multiple other instances, based on a memorandum or affidavit that included information to which the Court was not previously privy, the Court approved the original requested fee. In one instance, based on an itemization of counsel, the Court reduced the fee and provided counsel an opportunity for a hearing to challenge that interim ruling. *Id.* Finally, the Court determined that the hearing as to the appropriateness of the attorney fees needed to proceed in a smaller group of cases, but the Court adjourned the hearing in those

and the present case pending resolution of the Motion. For a list of these cases and their status as of the entry of this order, see *id.*

Of course, like all the attorneys involved in the cases just referenced, Counsel may decide whether to pursue a hearing on his fee in this matter. He can consider the Court's prior rulings and determine the appropriate course of action. But the fact that *Spurlock* may not, in his judgment, be advantageous to his position because: 1) he disagrees with the Judge's legal analysis, or 2) he has determined that his contested matter may have facts similar to *Spurlock,* resulting in a similar result, does not reflect judicial bias. To state the obvious, this is not a unique problem for practitioners. Judges enter decisions every day and reach legal determinations that affect cases both in the near present and far out into the future. Sometimes they are favorable to a specific party's position and sometimes they are not. Prior decisions, without some other indication of bias, are not a basis to seek disqualification. *Liteky*, 550 U.S. at 555-56; *Burley v. Gagacki*, 834 F.3d 606, 617 (6th Cir. 2016) (noting that some of the allegations of misconduct are based on court rulings and do not justify disqualification).

Counsel also argues that the timing of the Court's adjudication of these issues itself reflects a bias. This Judge does not generally comment on the internal management of his chambers. However, because Counsel specifically raised the timing of events as an element of the Court's bias, the Court will except this order from that principle. As will be explained, the Court was simply attempting to manage a series of cases that appeared to have similar facts and which raised a common legal issue about the reasonableness of the maximum no-look fee sought in those cases. The Court held a pre-hearing conference during which it discussed what information and procedures would be helpful in expediting the Court's review of the fees in those cases. The attorneys participating in that hearing posed a number of questions for the

Court, which the Court answered to the extent the Court could ethically do so. Notably, one of the attendees at that prehearing conference was Counsel's law partner, John Kennel.

As new Chapter 13 cases have been filed, the Court has continued to review the fees requested in those cases and continues to do so to this day. Therefore, the issue of judicial management before the Court was how to adjudicate newer cases for which the appropriateness of the maximum no-look fee could not be determined from the court's docket alone. The Court set this case for the August 18, 2022 hearing on July 20, 2022 (doc. 17) because the Court believed that Counsel would have sufficient time to prepare for the hearing and might want to participate with the other attorneys in the consolidated hearing. See Exhibit A. Other cases which the Court analyzed after the prehearing conference were set for this hearing as well. The Court had no other intention in scheduling the hearing for this case on August 18, 2022. If Counsel believed that a separate prehearing conference would have been helpful in this case, he could have requested such a conference. Further, the scheduling order allowed Counsel to request a different date for the hearing in this case if the date was "not feasible for counsel or counsel has some other reason for requesting a separate hearing[.]" *Id.* at 3. Finally, two other cases, including a different case for which Counsel is also the attorney, were not included in the August 18, 2022 hearing because the Court believed that the attorneys would have insufficient time to prepare by that date. Exhibit A. Regardless of whether the Court imperfectly addressed the scheduling of the hearing and filings for this contested matter, the Court was merely managing its docket, as it does every day.

## IV.    Summary and Conclusion

The Motion is premised upon Counsel's belief that this Judge cannot impartially determine the reasonableness of his attorney fees in this case because the Court rendered its

decision in the *Spurlock* case on August 1, 2022 and, according to Counsel, that decision "can

best be described as a 45-page long criticism of the concept of the "No-Look Fee" and clearly

demonstrates Judge Humphrey's opposition to said fee." Doc. 22 at 3. Counsel then accuses the

court of making the following "disparaging remarks" in *Spurlock*:

> "[t]he court views the practice of attorneys requesting an identical fee equal to the
> maximum no-look fee in every Chapter 13 case without regard to the issues as a
> red flag." And at one point Judge Humphrey signals his intended goal of
> discouraging the use of the "No-Look Fee" in stating "[t]he court is, however,
> concerned that implementation of a no-look fee structure in a district may have
> the effect of stifling creative and alternative billing practices by encouraging the
> use of the no-look flat fee."

*Id.* at 4 (citations omitted). Counsel then reiterates portions of the *Spurlock* decision which

discuss the history of the no-look fee in the Southern District of Ohio and concludes that: "Other

than *Spurlock*, there are no other reported decisions in this District denying any attorney the full

"No-Look Fee." Doc. 22 at 5.

It is apparent from the Motion that Counsel believes that he is entitled to the full no-look

fee of $4,350 in all Chapter 13 cases and that this Court's conclusion in *Spurlock* is erroneous

and should not be applied to him. However, Counsel's belief is not a justification for a collateral

attack on a court's decision through a motion to recuse or disqualify. A court's prior decision,

regarding the same or different parties, and a court's view of the law do not serve as a bias which

allow the disqualification of the judge. See *Liteky*, 510 U.S. at 554-55; *Green* at 1303-04.

Simply put, the Motion, if granted would allow Counsel to judge shop in an effort to

move to a judge who might not have the same view of the law as this Judge or who might apply

the law differently to Counsel. Further, such a strategy, if permitted, would allow every attorney

to avoid this Judge's review of his or her attorney fees in situations in which counsel have opted

to "take the no-look fee." Counsel's appropriate remedy is to allow this Court to determine the

reasonableness of his attorney fees in this case. If Counsel then believes that the Court erred in its findings of fact or in its conclusions of law, Counsel may appeal the Court's decision. Counsel may not avoid this Judge simply because he believes that he will find another judge who may apply the facts or law differently.

The hearing on the attorney fees in this case is to be rescheduled by a separate order. Counsel, like other attorneys who still have unresolved issues concerning their fees, can choose how best to proceed from here. Litigants have a right to appeal decisions that are not in their favor. But court rulings, without more, do not constitute bias justifying disqualification.

For all these reasons, the motion to disqualify is denied.

**IT IS SO ORDERED.**

Copies to:

Default List Plus

MaryAnne Wilsbacher (Assistant United States Trustee), 170 North High Street, Suite 200, Columbus, Ohio 43215-2417

Jeremy Shane Flannery (Counsel for the United States Trustee), 170 North High Street, Suite 200, Columbus, Ohio 43215-2417

16

EXHIBIT A

Cases scheduled for pre-hearing on May 19, 2022:

| No. | Debtor(s) Name(s) | Case No. | Disposition |
|---|---|---|---|
| 1 | Mary E. Cox, II | 21-31418 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 26 (doc. 49); Modification filed and attorney fee reduced (doc. 51); Reduced fee approved and hearing canceled on July 14 (doc. 56) |
| 2 | Kathy R. White | 21-31935 | Attorney attended pre-hearing (doc entry 5.19); Amended Disclosure filed prior to scheduling of 8.18 hearing (doc. 50); Reduced fee approved (doc. 51) |
| 3 | Jerry M. Putteet | 21-31952 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing May 27 (doc. 28); Rescheduled to 8.25 upon counsel's Motion to Continue (docs. 32 & 33); Hearing further continued (doc. 35); Full no-look fee approved upon review of memorandum and affidavit (docs. 37 & 38) |
| 4 | Melanie K. Carey | 21-31999 | Attorney attended pre-hearing (doc entry 5.19); Amended Disclosure filed prior to scheduling of 8.18 hearing (doc. 47); Reduced fee approved (doc. 48) |
| 5 | Christopher P. Holub | 21-32124 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 32); Full no-look fee approved upon review of memorandum (doc. 44) |
| 6 | Gwendolyn King | 21-32125 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 24); Amended Disclosure filed on Aug 16 (doc. 26); Reduced fee approved (doc. 27) |
| 7 | Jeffrey Allen Francis | 21-32134 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 36); Amended Disclosure filed on Aug 10 (doc. 39); Reduced fee approved (doc. 40) |
| 8 | Shawna L. King | 21-32138 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 28); Rescheduled to 9.29 upon counsel's informal request due to pending Motion to Dismiss scheduled for 9.8 (doc. 32) |
| 9 | JaNet Celestia Allen | 21-32144 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing May 26 (doc. 29); Case voluntarily dismissed on June 6 (docs. 31 & 32) |
| 10 | James H. Niedenthal, Jr. | 21-32148 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 26 (doc. 28); Affidavit filed (doc. 35); Hearing continued (doc. 36) |
| 11 | Candice Allen | 22-30032 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 24); Brief filed (doc. 26); Full no-look fee approved upon review of memorandum (doc. 27) |
| 12 | Quentin P. Landers | 22-30041 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing May 26 (doc. 25); Modification filed reducing fee (doc. 27), but case dismissed on Trustee's motion (doc. 34) |
| 13 | Christopher James Wismer | 22-30055 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 23); Witness and exhibit lists and Memorandum filed (docs. 26-28); Full no-look fee approved upon review of memorandum (doc. 29) |
| 14 | Kenitha M. Johnson | 22-30056 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 24); Memorandum filed (doc. 26); Full no-look fee approved upon review of memorandum (doc. 27) |

| 15 | Jennifer D. Sizemore | 22-30068 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 26 (doc. 45); Brief filed (doc. 51); Hearing continued (docs. 52) |
| 16 | Taylor R. Dudley | 22-30156 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 30); Affidavit filed (doc. 46); Hearing continued (doc. 47) |
| 17 | Lisa K. Hill | 22-30224 | Attorney attended pre-hearing (doc entry 5.19); Amended Disclosure filed prior to scheduling of 8.18 hearing (doc. 22); Reduced fee approved (doc. 23) |
| 18 | Elwood H. Anderson | 22-30299 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 26 (doc. 19); Brief and Affidavit filed (doc. 26 & 27); Full no-look fee approved upon review of memorandum and affidavit (doc. 28) |
| 19 | Edward Clay Ford | 22-30314 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 16); Memorandum filed (doc. 21); Full no-look fee approved upon review of memorandum (doc. 22) |
| 20 | Brandy R. Perkins | 22-30318 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 27 (doc. 19); Memorandum filed (doc. 24); Full no-look fee approved on June 1 upon review of memorandum (doc. 25) |
| 21 | Alexis S. Moore | 22-30327 | Attorney attended pre-hearing (docket entry 5.19); Scheduled 8.18 hearing on May 26 (doc. 25); Opt-Out Notice filed on Aug 11 (doc. 31) and Application for Compensation filed Aug 15 (doc. 32); Hearing canceled on Aug 16. Application not adjudicated yet. |

**Cases scheduled for hearing after the May 19, 2022 pre-hearing:**

| No. | Debtor(s) Name(s) | Case No. | Disposition |
| --- | --- | --- | --- |
| 1 | Kelly Brown | 22-30259 | Attorney attended pre-hearing in other case; scheduled 8.18 hearing on July 13 (doc. 19); Amended Disclosure filed (doc. 21); Reduced fee approved (doc. 22) |
| 2 | Thomas L. Talbott | 22-30338 | Scheduled 8.18 hearing on June 16 (doc. 18); Brief filed (doc. 26); Hearing continued (doc. 27) |
| 3 | Adam Dealton Brown Sarah Lindsay Brown | 22-30382 | Attorney attended pre-hearing in other case; scheduled 8.18 hearing on June 16 (doc. 15); Memorandum filed (doc. 19); Full no-look fee approved upon review of Memorandum (doc. 20) |
| 4 | Courtney E. Mobley | 22-30433 | Attorney attended pre-hearing in other case; scheduled 8.18 hearing on June 17 (doc. 16); Amended Disclosure filed (doc. 21); Reduced fee approved (doc. 22) |
| 5 | Michelle D. Martin | 22-30493 | Attorney attended pre-hearing in other case; scheduled 8.18 hearing on July 21 (doc. 19); Brief and Affidavit filed (doc. 22); Reduced fee approved with opportunity for counsel to object (doc. 23); no objection filed |
| 6 | Robin E. Laake | 22-30565 | Attorney attended pre-hearing in other case; scheduled 8.18 hearing on July 21, 2022 (doc. 19); Memorandum filed (doc. 23); Full no-look fee approved upon review of memorandum (doc. 24) |
| 7 | Brandon C. Buchholz | 22-30584 | Scheduled 8.18 hearing on July 21, 2022 (doc. 17); Motion to Disqualify and affidavit filed on Aug 11 (docs. 22 & 23); Hearing continued (doc. 24) |

**Cases requiring memoranda and not yet set for hearing:**

| No. | Debtor(s) Name(s) | Case No. | Disposition |
| --- | --- | --- | --- |
| 1 | Matthew Johnson, Sr. Shaneice Johnson | 22-30550 | Attorney attended pre-hearing in other case; case filed on April 29; Memo/Affidavit due on September 16 (doc. 24) |
| 2 | Glen D. Combs | 22-30644 | Case was filed on May 18 after pre-hearing was already scheduled; Memo/Affidavit due on September 16 (doc. 23) |